## TYRNA v ADAMO, INC

Docket No. 89668. Submitted November 19, 1986, at Detroit. Decided
April 21, 1987.

Mary Tyrna, an employee of Adamo, Inc., became ill from fumes
from a faulty furnace in the building where she worked. Tyrna
contacted a repair company which had recently serviced the
furnace and was informed that the company would make no
further repairs to the furnace because it needed to be replaced.
Tyrna informed John Adamo, Sr., president and co-owner of
Adamo, Inc., that the furnace was leaking fumes and needed to
be replaced. Mr. Adamo refused to do anything about the
furnace. Approximately one week later, Tyrna became ill
enough to visit the emergency room of a hospital where she
was diagnosed as having carbon monoxide intoxication. Tyrna
complained to the Dearborn Health Department about the
furnace, and a fire marshal and a sanitarian from the Dearborn
Health Department inspected the furnace, found it faulty, and
concluded that the gas company should disconnect it until the
furnace was repaired or replaced. The Dearborn Building and
Safety Department subsequently inspected the furnace and
issued a violation notice to Adamo, Inc. A new furnace was
installed and Tyrna returned to work. She was fired three days
later. Mary Tyrna filed a claim against Adamo, Inc., and others
under the Michigan Occupational Safety and Health Act and
also filed suit against Adamo, Inc., and others in Wayne Circuit
Court alleging that she was fired, in violation of the Whistle-
blowers' Protection Act, in retaliation for having reported the
faulty furnace to the Dearborn Health Department. Tyrna also
alleged that defendants violated public policy in firing her for
exercising her right to speak out freely in protection of herself
and other citizens. The court, Thomas Roumell, J., granted
summary disposition in favor of defendants, finding that plain-

REFERENCES

Whistleblowers' protection under Energy Reorganization Act § 210
(42 USCS § 5851). 79 ALR Fed 631.
Construction of provision of Fair Labor Standard Act (29 USC
§ 215(a)(3) forbidding reprisals against any employee who has filed
complaint, or the like, under the act. 93 ALR2d 610.

tiff's exclusive remedy was an administrative action for wrongful discharge under MIOSHA. Plaintiff appealed.

The Court of Appeals *held:*

1. An employee who reports a public health or safety violation to appropriate local authorities may maintain an action under the whistleblowers' act notwithstanding the fact that the employer's wrongful conduct also violates MIOSHA.

2. Plaintiff stated a prima facie claim under the whistleblowers' act.

Reversed and remanded.

1.—MASTER AND SERVANT — PUBLIC HEALTH AND SAFETY — WHISTLEBLOWERS' PROTECTION ACT — MICHIGAN OCCUPATIONAL SAFETY AND HEALTH ACT.

An employee who reports a public health or safety violation to appropriate local authorities may maintain an action under the Whistleblowers' Protection Act notwithstanding the fact that the employer's wrongful conduct also violates the Michigan Occupational Safety and Health Act (MCL 15.361 *et seq.,* 408.1001 *et seq.;* MSA 17.428[1] *et seq.,* 17.50[1] *et seq.*).

2. MASTER AND SERVANT — WHISTLEBLOWERS' PROTECTION ACT.

The Whistleblowers' Protection Act specifically creates a civil action, providing a full panoply of legal and injunctive remedies including reinstatement, payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, and costs, including reasonable attorney and witness fees; the act also creates a civil fine for violators of the act (MCL 15.363, 15.364, 15.365; MSA 17.428[3], 17.428[4], 17.428[5]).

3. MASTER AND SERVANT — PUBLIC HEALTH AND SAFETY — MICHIGAN OCCUPATIONAL SAFETY AND HEALTH ACT.

The Michigan Occupational Safety and Health Act creates an administrative action within the Department of Labor, which can order all appropriate relief, including rehiring or reinstatement to the employee's former position with back pay; the safety, health, and general welfare of employees is a primary public concern under MIOSHA (MCL 408.1009, 408.1065[2]; MSA 17.50[9], 17.50[65][2]).

4. MASTER AND SERVANT — WHISTLEBLOWERS' PROTECTION ACT.

A prima facie case of retaliation in a discharge case brought under the Whistleblowers' Protection Act requires proof (1) that the plaintiff was engaged in protected activities as defined by the act, (2) that the plaintiff was subsequently discharged,

and (3) that a causal connection existed between the protected activity and the discharge (MCL 15.361 *et seq.;* MSA 17.428[1] *et seq.*)

*Stark & Gordon* (by *Brian B. Smith* and *Clark D. Cunningham*), for plaintiff.

*Lakin, Worsham & Victor* (by *Larry Farber*), for defendant.

Before: SHEPHERD, P.J., and WAHLS and SULLIVAN, JJ.

SHEPHERD, P.J. Plaintiff's complaint alleged that she was fired in retaliation for reporting various safety law violations, contrary to the protections provided by the Whistleblowers' Protection Act MCL 15.361 *et seq.;* MSA 17.428(1) *et seq.* The trial court granted summary disposition pursuant to MCR 2.116(C)(8), concluding that plaintiff's exclusive remedy was an administrative action for wrongful discharge under the Michigan Occupational Safety and Health Act, MCL 408.1001 *et seq.;* MSA 17.50(1) *et seq.* We reverse and hold that an employee who reports a public health or safety violation to appropriate local authorities may maintain an action under the whistleblowers' act notwithstanding the fact that the employer's wrongful conduct also violates MIOSHA.

We have examined the facts set forth in plaintiff's complaint. Plaintiff was hired on October 8, 1984, to implement an accounting system for defendant Adamo Inc., and its three subsidiaries: Adamo Equipment Rental, Inc., Adamo Construction Co., Inc., and Adamo Wrecking Company, Inc. She was hired by defendant John Adamo, Sr., president and co-owner of Adamo, Inc. Shortly after she began working, plaintiff developed a

variety of health problems. At some point, a problem became evident in defendants' furnace, so that it would not shut off automatically and became very hot. Plaintiff could smell fumes in her work area which she determined came from the furnace. Plaintiff called the repair company which had recently repaired the furnace. The company refused to make further repairs, indicating that the furnace needed to be replaced. Another repair person stated that the furnace had a cracked block and was causing the fumes.

On February 26, 1985, plaintiff learned that her sister, who also worked for defendants in the same office, had been diagnosed as having carbon monoxide poisoning from breathing the furnace fumes. Plaintiff shut off the furnace and it remained off through February 27, 1985, while John Adamo was out of the office. When he returned on February 28, he apparently turned it on again and fumes were again present in plaintiff's work area. Plaintiff complained to Adamo, but he refused to shut the furnace off or replace it, insisting instead that it be left on to "take the chill out of here."

After working on March 4, 1985, plaintiff felt ill enough to visit the emergency room at Wyandotte General Hospital. Dr. Donald Reusink gave the following diagnosis and recommendation:

> Accute [sic] chemical (carbon monoxide) intoxication with cerebral dysfunction. Positively advised not to re-enter the confines of her present position of employment until there is documented proof that she will no longer be exposed to carbon monoxide fumes.

During late February and early March, 1985, plaintiff called the Dearborn Health Department

to complain about the furnace.[1] On March 5, 1985, a Dearborn Fire Marshal and a sanitarian from the Dearborn Health Department inspected defendants' premises. They found several problems with the furnace and concluded that the gas company should disconnect it until the furnace was repaired or replaced. The sanitarian shut off the furnace on March 6, 1985. The Dearborn Building and Safety Department subsequently inspected the furnace and issued a violation notice to defendants.

Plaintiff returned to work on March 18, 1985, after a new furnace had been installed. She submitted to John Adamo documentation of her medical expenses as a result of breathing carbon monoxide fumes. Plaintiff did not realize that, on the back of one sheet, she had written the names, numbers, and addresses of her doctor, the Dearborn Fire Marshal, and the Dearborn Health Department sanitarian. John Adamo fired plaintiff on March 21, 1985.

Plaintiff alleged that this was in retaliation for her report to the Dearborn Health Department. In addition to the whistleblowers' claim, plaintiff's complaint also contained a second count alleging defendants' violation of public policy in firing her for exercising her right to speak out freely in protection of herself and other citizens. Defendants contend on appeal that plaintiff was fired for an unsatisfactory job performance.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(8), alleging that plaintiff had failed to state a claim upon which relief could be granted. Defendants' supporting brief urged

[1] On appeal, plaintiff also states that she complained to the Michigan Occupational Safety and Health Bureau. We do not find such an allegation in her complaint, however. Moreover, while plaintiff's complaint states that she called the Dearborn Board of Health, it appears from the remainder of her complaint that she in actuality called the Dearborn Health Department.

that plaintiff's only recourse was an administrative action under MIOSHA rather than the whistleblowers' act. In response, plaintiff stated that she was pursuing an administrative claim under MIOSHA, but was also entitled to pursue her whistleblowers' claim. The trial court granted summary disposition on October 26, 1985, finding that MIOSHA provided plaintiff with her exclusive remedy for alleged employment discrimination resulting from complaints under MIOSHA.

A motion for summary disposition under MCR 2.116(C)(8) tests the legal basis of the complaint, not whether it can be factually supported. The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may be fairly drawn from them. Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion should be denied. *Sponkowski v Ingham Co Road Comm,* 152 Mich App 123, 126-127; 393 NW2d 579 (1986).

The whistleblowers' act, MCL 15.362; MSA 17.428(2), provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

MIOSHA provides for an extensive body of regulations governing safety in the work place. The MIOSHA provision relevant to this case is found at MCL 408.1065(1); MSA 17.50(65)(1):

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under or regulated by this act or has testified or is about to testify in such a proceeding or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

It appears that the trial court found MIOSHA to be plaintiff's exclusive remedy under the facts of this case. As a result, the court apparently concluded that the whistleblowers' act was unavailable to plaintiff and, thus, plaintiff's complaint failed to set out a claim upon which relief could be granted.

Defendants cite *Ohlsen v D S T Industries, Inc,* 111 Mich App 580; 314 NW2d 699 (1981), to support the conclusion that MIOSHA provides plaintiff's exclusive remedy. In *Ohlsen,* the plaintiff claimed that his discharge was in retaliation for his protesting an unsafe place to work, a right afforded him under MIOSHA. The circuit court granted summary judgment for failure to state a claim, concluding that plaintiff had no right to bring a civil action since MIOSHA's provision for an administrative action provided the plaintiff's exclusive remedy. Finding no common-law right to refuse to work upon alleging an unsafe work place, this Court held that "the remedies provided in the MIOSHA statute are exclusive and not cumulative." 111 Mich App at 583.

We do not find *Ohlsen* determinative, however. The whistleblowers' act was not involved in that

case, since the *Ohlsen* plaintiff was fired in 1977 and the whistleblowers' act did not become effective until 1981. The instant plaintiff is not seeking to enforce common-law rights, but statutory rights granted under a separate act. It is apparent that an overlap exists between the statutes and the protections they afford an employee. MIOSHA provides a remedy to an employee terminated in retaliation for filing a complaint or instituting a proceeding under MIOSHA. MCL 408.1065; MSA 17.50(65). The whistleblowers' act, on the other hand, provides a remedy to an employee terminated for reporting to any public body a violation of any law or regulation of this state, a political subdivision, or the United States. MCL 15.362; MSA 17.428(2).

MIOSHA relates to safety in the work place only. The whistleblowers' act relates to all laws and regulations. MIOSHA encourages reporting to MIOSHA officials. The whistleblowers' act encourages reporting to all agencies responsible for enforcement. In the instant case both plaintiff and the City of Dearborn had an interest, independently of MIOSHA considerations, to have the defective furnace reported immediately so that it could be corrected immediately for the protection of plaintiff and the general public. Therefore, the instant plaintiff's complaint regarding the defective furnace apparently satisfies the requirements of both statutes. We hold that the Legislature has provided overlapping remedies for an employee whose employment is terminated in retaliation for such reporting. The Legislature has not provided that the employee must pursue only one statutory remedy.

The whistleblowers' act is a relatively new statute. This Court analyzed it in some detail in the recent case of *Hopkins v City of Midland,* 158

Mich App 361; 404 NW2d 744 (1987). We held that the act "seeks to protect the integrity of the law by removing barriers to employee efforts to report violations of the law" and also "to protect the public by protecting employees who report violations of laws and regulations." 158 Mich App at 374.

In *Hopkins,* the question was whether the Legislature intended the whistleblowers' act to be judicially enforceable in a situation where the plaintiff also had arbitrable claims. *Hopkins* noted that the whistleblowers' act specifically creates a "civil action." MCL 15.363; MSA 17.428(3). It provides a full panoply of legal and injunctive remedies including reinstatement, payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, as well as costs including reasonable attorney and witness fees. MCL 15.364; MSA 17.428(4). The whistleblowers' act also creates a civil fine for violators of the act. MCL 15.365; MSA 17.428(5). *Hopkins* noted that these provisions exceed the typical scope of arbitration relief. 158 Mich App at 374.

The remedies provided by the whistleblower's act also differ somewhat from the scope of relief under MIOSHA. That act creates an administrative action within the Michigan Department of Labor, which can order all "appropriate relief, including rehiring or reinstatement" to the employee's former position with back pay. MCL 408.1065(2); MSA 17.50(65)(2). The safety, health, and general welfare of employees is a primary public concern under MIOSHA. By it, the Legislature intended "that all employees shall be provided safe and healthful work environments free of recognized hazards." MCL 408.1009; MSA 17.50(9). These goals do not conflict with the goals of the whistleblowers' act outlined in *Hopkins,* and we see no

reason, without further legislative direction, that plaintiff should not be able to pursue a cause of action under both statutes. Therefore, we do not share the trial court's view that plaintiff could not proceed under the whistleblowers' act.

Because it so held, the trial court did not determine whether plaintiff stated a prima facie claim under the whistleblowers' act. From *Hopkins,* it appears that a prima facie case of retaliation in a discharge case requires proof (1) that plaintiff was engaged in protected activities as defined by the act, (2) that plaintiff was subsequently discharged, and (3) that a causal connection existed between the protected activity and the discharge. Taking the facts alleged in plaintiff's complaint as true, we believe plaintiff has stated a claim upon which relief could be granted. Plaintiff reported the unsafe furnace to an appropriate public body, the Dearborn Health Department. This conduct was protected under the whistleblowers' act, as it is clear plaintiff was reporting a public health violation. Defendants discharged plaintiff. The causal connection can be inferred from the fact that plaintiff complained to John Adamo about the furnace and he refused to act and the fact that plaintiff was then fired three days after her employer received documents from her bearing the phone numbers of various public agencies after defendants had been cited for work place safety violations.

Accordingly, we reverse the grant of summary disposition on plaintiff's whistleblower claim and remand for further proceedings.[2]

Reversed and remanded.

---

[2] Plaintiff does not appear to argue on appeal that the court erred in granting summary disposition as to her second count alleging a violation of public policy. This count appears to be rather similar to plaintiff's whistleblower claim. As plaintiff has not appealed the dismissal, we do not address the issue.